# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 22-1317 JB

ERICK MCDONALD,

      Defendant.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed February 15, 2024 (Doc. 38)("Motion"). The Court held a hearing on March 20, 2024. See Clerk's Minutes, filed March 20, 2024 (Doc. 45). The primary issue is whether the Court should reduce Defendant Erick McDonald's sentence under 18 U.S.C. § 3582(c)(2), because the United States Sentencing Commission ("Sentencing Commission") has lowered McDonald's sentencing range by enacting the newly effective and retroactively applicable criminal history "status point" calculation amendment to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The Court grants the Motion, because: (i) McDonald qualifies for the status point reduction; (ii) the reduction McDonald requests is consistent with the U.S.S.G. § 1B1.10 policy statement; and (iii) a reduction in McDonald's sentence is appropriate in light of the 18 U.S.C. § 3553(a) sentencing factors.

## FACTUAL BACKGROUND

On July 17, 2013, McDonald was convicted in the United States District Court for the District of New Mexico of Abusive Sexual Contact under 18 U.S.C. § 1153, Crime in Indian Country, and 18 U.S.C. § 2244(a)(2) and (c) and 2246(3). See Judgment in a Criminal Case, filed

August 29, 2013 (No. CR 13-0629 Doc. 32); Presentence Investigation Report ¶ 6, at 3, filed March 27, 2023 (Doc. 22)("PSR").  Pursuant to these offenses, McDonald must register under the Sex Offender Registration and Notification Act, 34 U.S.C. §§ 20901-20962 ("SORNA").  PSR ¶ 6, at 3.  On August 28, 2018, a federal Grand Jury returned an indictment charging McDonald with failing to register as a sex offender under SORNA in violation of 18 U.S.C. § 2250(a).  See Indictment at 1, filed August 28, 2018 (CR 18-2831 Doc. 2).  On March 19, 2019, after McDonald pled guilty to the charge in the indictment, the Court sentenced McDonald to 18 months at the bottom of the Guideline range of 18-24 months.  See Judgment in a Criminal Case at 2, filed March 19, 2019 (CR 18-2831 Doc. 25)("First Failure to Register Judgment"); Presentence Investigation Report ¶ 62, at 13, filed February 12, 2019 (CR 18-2831 Doc. 20)("Based upon a total offense level of 13 and a criminal history category of III, the guideline imprisonment range is 18 months to 24 months.").  The Court also imposed a term of five years of supervised release, and imposed mandatory conditions directing McDonald to "comply with the requirements of the Sex Offender Registration and Notification Act," and to "not commit another federal, state, or local crime."  First Failure to Register Judgment at 3.  The Court also imposed a special condition directing McDonald to "not use or possess alcohol."  First Failure to Register Judgment at 5.

On January 31, 2020, the Bureau of Prisons ("BOP") released McDonald from incarceration and the Court commenced supervision.  See Violation Report, filed September 23, 2021 (CR 18-2831 Doc. 35)("First Violation Report").  On September 22, 2021, New Mexico State Police officers arrested McDonald and charged with Driving While Under the Influence ("DWI"), following an incident in which McDonald was discovered with an open alcoholic beverage in his vehicle, and it was determined that McDonald's blood alcohol concentration post-arrest "was at 0.12."  First Violation Report at 1.  Following McDonald's arrest for DWI, the

United States Probation Office ("USPO") presented to the Court a Petition for Revocation of Supervised Release, filed September 23, 2021 (CR 18-2831 Doc. 34)("Petition for Revocation"), which alleges that McDonald violated the imposed mandatory condition that he must not commit another offense, and also the imposed special condition that McDonald not use or possess alcohol. See Petition for Revocation at 1-2. The Court subsequently issued a warrant for McDonald's arrest, see Arrest Warrant, filed September 28, 2021 (CR 18-2831 Doc. 37), and, on June 30, 2022, McDonald was arrested, see Arrest Warrant Returned Executed, filed July 1, 2022 (CR 18-2831 Doc. 39). On July 5, 2022, the Honorable Steven Yarbrough, Magistrate Judge for the United States District Court for the District of New Mexico, ordered McDonald detained pending a hearing on the revocation of McDonald's supervised release. See Oral Order, filed July 5, 2022 (CR 18-2831 Doc. 42)(text-only); Order of Detention Pending Probation Revocation Hearing, filed July 7, 2022 (CR 18-2831 Doc. 48). On July 6, 2022, the USPO informed the Court that a Criminal Complaint had been filed against McDonald in New Mexico State court charging McDonald with Failure to Comply with Sex Offender Registration. See Amended Violation Report, filed July 6, 2022 (CR 18-2831 Doc. 44).

On August 9, 2022, a federal Grand Jury returned an indictment charging McDonald with a second failure to register as a sex offender under SORNA in violation of 18 U.S.C. § 2250(a) and 34 U.S.C. § 20913. See Indictment at 1, filed August 9, 2022 (Doc. 2). McDonald pled guilty to the Indictment's charge. See Plea Minute Sheet at 1, filed December 22, 2022 (Doc. 18). The PSR calculates McDonald's subtotal criminal history score as 6 and adds 2 status points pursuant to U.S.S.G. § 4A1.1(d), because McDonald "committed the instant offense while under a criminal justice sentence . . . ." PSR ¶¶ 29-30, at 8. Thus, the PSR calculates a total criminal history score of 8, which results in a criminal history category of IV. See PSR ¶ 31, at 8. Based upon a total

offense level of 13 and a criminal history category of IV, the PSR calculates a Guideline imprisonment range of 24 months to 30 months.  See PSR ¶ 71, at 16.

At sentencing for his second failure-to-register conviction, the United States proposed a sentence "at the midpoint of the Guidelines range, 27 months."  United States' Sentencing Memorandum at 3, filed April 7, 2023 (Doc. 26).  McDonald requested a 24-month sentence for his present failure-to-register offense, in addition to 3 months for his violation of supervised release -- which resulted from committing his present offense while still under supervised release for his previous failure-to-register offense -- for a total of 27 months.  See Defendant's Sentencing Memorandum at 2, filed July 6, 2023 (Doc. 34); Draft Transcript of July 12, 2023, Sentencing at 7:22-8:5 (taken July 12, 2023)(Fooks)("Sentencing Tr.")("I suggested a sentence of 27 months to incorporate both the supervised release violation as well as the new charges.").[1]  The United States agreed that a total sentence of 27 months both for the failure to register offense and the supervised release violation is reasonable.  See Sentencing Tr. at 12:10-13 (Bell).  The Court agreed that "the parties have proposed a good resolution for resolving both of these cases with a total term in prison of 27 months."  Sentencing Tr. at 40:4-6 (Court).  To arrive at the 27-month sentence to which the parties agreed, the Court sentenced McDonald to 26 months for his failure-to-register offense, see Judgment in a Criminal Case at 2, filed August 2, 2023 (Doc. 36); Sentencing Tr. at 15:18 (Court), and imposed 8 months' imprisonment for McDonald's violation of supervised release, see Sentencing Tr. at 38:9 (Court), 7 months of which the Court concluded would run concurrently with McDonald's 26-month sentence for failure to register as a sex offender, see Judgment in a

_____

[1]The Court's citations to the draft transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

- 4 -

Criminal Case at 2, filed August 2, 2023 (CR 18-2831 Doc. 67); Sentencing Tr. at 12:16-13:2 (Court, Bell, Fooks)("I maybe sentence him to 26 months in this case, and then I sentence him to . . . 8 months, and run 7 of it concurrent . . . .  And then put one month as consecutive.").[2]

On February 15, 2024, McDonald filed the Motion, in which he requests the Court reduce his sentence in light of Amendment 821.  See Motion at 1-2; Supplement to Appendix C 234-44, United States Sentencing Commission (2023)("Supp. to App. C").  McDonald argues that Amendment 821 decreases by one the criminal history score status points under U.S.S.G. § 4A1.1 for defendants, like him, "with seven or more criminal history points."  Motion at 1.  As a result of the amendment, which McDonald avers applies retroactively, McDonald calculates his new Guidelines imprisonment range at 18 to 24 months and asks the Court to reduce his sentence to 20 months, and, "[i]f the reduction is less than the amount of time the defendant has already served, the sentence should be reduced to a time-served sentence."  Motion at 1-2 (citing U.S.S.G. § 1B1.10 cmt. n.3).  In addition, McDonald contends that the reduction he requests is consistent with 18 U.S.C. § 3553(a).  See Motion at 2.

The United States opposes McDonald's Motion.  See United States of America's Response to Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(2) and Guideline Ammendment [sic] 821 (Doc. 38) at 1, filed March 15, 2024 (Doc. 41)("Response").  "The United States does not dispute that Defendant is eligible for a sentence reduction as a result of Guideline Amendment 821."  Response at 1, 4.  Nonetheless, the United States argues that "the nature and

---

[2]The Court typically will sentence a defendant who has violated condition of supervised release in this way.  There should be some consequences for violating supervised release, but the Court also does not want to undo the hard work that it has done in arriving at a sentence if the new crime also over emphasizes -- twice -- punishment of the same activity.

circumstances of his offense along with his criminal history and characteristics do not support a reduction in his sentence." Response at 4. The United States contends that the fact that McDonald already has been convicted of the same offense and that he "has not participated in or completed any programs while in prison," leads to the conclusion that the 18 U.S.C. 3553(a) factors do not support McDonald's release. Response at 4-5.

The Court held a hearing on March 20, 2024. See Clerk's Minutes at 1. At the hearing, McDonald directed the Court's attention to the fact that the United States agrees he is eligible for the reduction in sentence, and argued that the Court need not consider the original offense in determining whether to apply the amendment. See Draft Transcript of March 20, 2023, Hearing at 5:10-6:9 (taken March 20, 2023)(Potter)("Tr."). The United States responded that the determination of eligibility "was not the end of the analysis," because, under Dillon v. United States, 560 U.S. 817 (2010), the Court must proceed to consider "the circumstances of his offense" as part of the 18 U.S.C. 3553(a) analysis. Tr. at 6:12-7:10 (Bell). Given that McDonald already had committed a previous SORNA violation by failing to register, the United States argued, McDonald should not be entitled to a reduction in his sentence. See Tr. at 7:10-18 (Bell); id. at 9:22-10:4 (Bell). McDonald replied that his request for a reduction in his sentence to 20 months is reasonable, because a 20-month sentence constitutes a sentence at the low end of the amended Guidelines, and the Court originally imposed a sentence at the low end of the previous version of the Guidelines. See Tr. at 11:25-12:14 (Potter).

The Court advised the parties that it would grant the motion. See Tr. at 14:14 (Court); id. at 18:5-13 (Court). The Court explained that it gave McDonald a Guideline sentence when it originally sentenced him on August 2, 2023, and, because the Guidelines subsequently changed with retroactive effect, the Court thought that, "to be consistent," it is appropriate to give

McDonald another Guideline sentence now.  Tr. at 19:9-15 (Court).  After the March 20, 2023, hearing, the Court filed its Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), filed March 25, 2024 (Doc. 44)("Order").  In the Order, the Court grants the Motion pursuant to 18 U.S.C. § 3582(c)(2) and reduces McDonald's 26-month sentence to "589 days or time served."  Order at 1.

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges advisory.  See United States v. Booker, 543 U.S. at 261.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261. Accordingly, even though the Guidelines are not mandatory, courts must consult them for advice in arriving at an appropriate sentence.  See Peugh v. United States, 569 U.S. 530, 541-42 (2013). The Guidelines should provide a starting point for the court's determination of a proper sentence. See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."); Peugh v. United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.").

Congress has directed sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four statutorily defined purposes enumerated in

18 U.S.C. § 3553(a)(2):

> **(A)**     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)**     to afford adequate deterrence to criminal conduct;
>
> **(C)**     to protect the public from further crimes of the defendant; and
>
> **(D)**     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to further consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper in light of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission

examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[3] Guidelines sentence. See Rita v. United States, 551 U.S. at 351; Gall v.

---

[3]Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to say that the resulting Guidelines ranges are advisory. See Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated to apply, however, a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

    The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole.

United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February

<hr/>

The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

- 10 -

13, 2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89.  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

## LAW REGARDING 18 U.S.C. § 3582(c)(2) SENTENCE REDUCTIONS

"Generally, a district court may not modify a term of imprisonment once it has been imposed."  United States v. Williams, 575 F.3d 1075, 1076 (10th Cir. 2009).  "A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."  United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).  18 U.S.C. § 3582(c)(2) establishes a narrow exception to this general rule of finality "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ."  18 U.S.C. § 3582(c)(2).  When the Commission revises the Guidelines in a way that reduces the Guidelines range for "a particular offense or category of offenses," the Commission must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  "In this way the Act requires the Commission to decide whether amendments to the Guidelines should have retroactive effect." Hughes v. United States, 584 U.S. 675, 681 (2018).  If an amendment applies retroactively, § 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is

consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.

§ 3582(c)(2).

The United States Court of Appeals for the Tenth Circuit has explained that a defendant

must satisfy three prongs[4] to qualify for a sentence modification under Section 3582(c)(2).  See

United States v. C.D., 848 F.3d 1286, 1289 (10th Cir. 2017)("C.D.").  First, "the defendant must

show he was sentenced based on a guideline range the Sentencing Commission lowered

---

[4]Despite the clear pronouncement in United States v. C.D., 848 F.3d 1286 (10th Cir. 2017)("C.D."), that "Section 3582(c)(2) *plainly* tells us a defendant must overcome three *distinct* hurdles before he may obtain a sentence reduction," 848 F.3d at 1289 (emphasis in original), the Tenth Circuit has applied both a three-prong and two-prong analysis in unpublished § 3582(c)(2) decisions following C.D., compare United States v. Toombs, 712 F. App'x 791, 794 (10th Cir. 2017)("We have recently explained that a defendant must 'overcome three distinct hurdles before he may obtain a sentence reduction [under § 3582(c)(2)].'" (quoting C.D., 848 F.3d at 1289)(alterations in United States v. Toombs)), with United States v. Cota-Medina, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. March 31, 2022)("In determining whether to grant a sentence reduction under § 3582(c)(2), the court engages in 'a two-step process.'").  District courts in the Tenth Circuit, likewise, continue to apply both a three-step and two-step analysis.  Compare United States v. Collazo, No. 09-CR-2621, 2020 WL 601943, at *2 (D.N.M. February 6, 2020)(Parker, J.)("The Tenth Circuit has explained that there are three prongs a defendant must meet to qualify for a sentence modification under 3582(c)(2)."), with United States v. Fabian-Hurtado, No. CR 21-0644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.)("When considering a retroactive Guidelines amendment, the Court engages in a two-step process").

A two-pronged inquiry is appealing to a degree, because, under the three-prong analysis, "the second and third prongs overlap" to the extent that U.S.S.G. § 1B1.10 cmt. n.1(B), which courts must consider at the second step of the three-prong analysis, calls upon courts to evaluate the § 3553(a) factors that must be examined at the third prong.  United States v. Collazo, 2020 WL 601943, at *3.  As formulated by the Tenth Circuit, however, the two-step inquiry runs the risk of omitting evaluation of U.S.S.G. § 1B1.10 altogether, see United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013), and § 3582(c)(2) is clear that courts may only reduce a defendant's sentence "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. 3582(c)(2).  The Court will apply, therefore, the three-prong analysis, because: (i) the Tenth Circuit's most recent published pronouncement on the matter plainly calls upon the courts to use a three-part test, see C.D., 848 F.3d at 1289; (ii) a three-step inquiry mirrors the similar and settled three-step inquiry courts undertake when evaluating a motion for compassionate release pursuant to § 3582(c)(2)'s sister statute, 18 U.S.C. § 3582(c)(1); and (iii) there is value in ensuring that the U.S.S.G. § 1B1.10 policy statement, and the important limitations to sentence reductions included therein, is given independent consideration.

subsequent to defendant's sentencing." C.D., 848 F.3d at 1289.  The first prong is jurisdictional: if the defendant fails to make this initial showing, "the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed." C.D., 848 F.3d at 1289.[5]  See United States v. Munoz, 682 F. App'x 635, 636 (10th Cir. 2017)(remanding to the district court, because it "appear[s] that the district court denied the motion on the merits. It should have, instead, dismissed the matter for lack of jurisdiction").  Second, a defendant must show that "his request for a sentence reduction is consistent with the Commission's policy statements." C.D., 848 F.3d at 1289 (emphasis added).  U.S.S.G. § 1B1.10 is the policy statement concerning a sentence reduction resulting from an amended Guidelines.  See C.D., 848 F.3d at 1289.  The second requirement, unlike the first, is "not a jurisdictional prerequisite to § 3582(c)(2) relief." C.D., 848 F.3d at 1289.  "Third, the defendant must convince the district court he is entitled to relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)." C.D., 848 F.3d at 1289-90.

---

[5]Recently, the Tenth Circuit has called into question whether the first prong of the § 3582(c)(2) analysis is jurisdictional.  See United States v. Warren, 22 F.4th 917, 926 n.6 (10th Cir. 2022)(acknowledging that, because 18 U.S.C. § 3582(c)(2) does not contain "an unequivocal statement from Congress" regarding its jurisdictional effect,  "our precedent on this issue may need to be revisited," but declining to "seek en banc reconsideration of this question here").  As the Court has recognized, the Tenth Circuit recently has concluded that aspects of 18 U.S.C. § 3582(c)(1) are not jurisdictional.  See United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *6 (D.N.M. November 22, 2023)(Browning, J.)(citing United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)(concluding that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional); United States v. Hald, 8 F.4th 932, 942 n.7 (10th Cir. 2021)(declining "to read a jurisdictional element in § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication . . . to that effect" (quoting 18 U.S.C. § 3582(c)(1)(A))).  Nonetheless, because the Tenth Circuit has not revisited its holding that the first step of the Section 3582(c)(2) analysis is jurisdictional, the Court must, as a district court, treat the first step as jurisdictional.  See United States v. Hald, 8 F.4th at 942 n.7 ("We acknowledge that this circuit has [held] that § 3582(c)(2)'s requirement that the defendant 'show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing' is a jurisdictional requirement that must be addressed first by the district court." (quoting C.D., 848 F.3d at 1289-90)).

Congress and the Sentencing Commission have placed three primary restrictions on the relief available under § 3582(c)(2).  First, courts cannot reduce the term of imprisonment below time served.  See U.S.S.G. § 1B1.10 cmt. n.3.  Second, courts may not reduce a defendant's sentence below the amended Guidelines range, unless the defendant originally received a below-Guidelines sentence because the United States made a motion to reflect the defendant's substantial assistance to authorities.  See U.S.S.G. § 1B1.10 (b)(2)(A)-(B).  In such a case, a sentence "comparably less than the amended guideline range" may be appropriate.  U.S.S.G. § 1B1.10 (b)(2)(B). See Dillon v. United States, 560 U.S. at 826-27 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range.").  Third, a district court may not grant a sentence reduction if the defendant's original sentence was "based on" a statutory mandatory minimum sentence rather than a Guidelines range.  18 U.S.C. § 3582(c)(2).  Mandatory minimums foreclose 18 U.S.C. § 3582(c)(2) sentence reductions even for defendants who escape the mandatory minimum by providing substantial assistance to law enforcement, because their sentences are "'based on' on their mandatory minimums and their substantial assistance to the Government, not on the sentencing ranges that the Commission later lowered." Koons v. United States, 584 U.S. 700, 702 (2018).  Consequently, for these defendants, a reduced sentence under 18 U.S.C. § 3582(c)(2) is not available.  See Koons v. United States, 584 U.S. at 702.

The Guidelines give specific guidance to courts contemplating sentence reductions.[6]  First, courts "shall determine the amended guideline range that would have been applicable to the

---

[6]Sentence reduction hearings under this statute are not full resentencing proceedings.  See U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement

defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). In making this decision, courts "shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). See Freeman v. United States, 564 U.S. 522, 531 (2011)(Kennedy, J., plurality opinion)("The binding policy statement governing § 3582(c)(2) motions places considerable limits on district court discretion. All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment."). In other words, "district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment to the Guidelines." United States v. Washington, 759 F.3d 1175, 1182 (10th Cir. 2014). The Supreme Court has interpreted "all other guideline application decisions" broadly, holding that courts generally cannot revisit sentencing courts' calculations. U.S.S.G. § 1B1.10(b)(1). In United States v. Dillon, the defendant argued that the sentencing court's decision to treat the Guidelines as mandatory violated his Constitutional rights under United States v. Booker, 543 U.S. 220 (2005). See United States v. Dillon, 560 U.S. at 831. The Supreme Court rejected the defendant's attempt to "recalculate" his sentence and correct the error, explaining that this aspect of his sentence was "outside the scope of the proceeding authorized by § 3582(c)(2)." United States v. Dillon, 560 U.S. at 831.

---

do not constitute a full re-sentencing of the defendant."); Dillon v. United States, 560 U.S. at 83 ("[Section] 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission.").

1.      **Amendment 821.**

The Sentencing Commission has a responsibility to periodically "review and revise" its Guidelines.  28 U.S.C. § 994(o).  It may choose to reduce the term of imprisonment "recommended in the guidelines applicable to a particular offense or category of offenses," but it must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  Congress has directed the Sentencing Commission to formulate its Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission."  28 U.S.C. § 994(g).

U.S.S.G. § 4A1.1(e) of the sentencing guidelines adds "status" points to a defendant's criminal history score if the defendant "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  U.S.S.G. § 4A1.1(e).  A defendant's criminal history score determines in which of six criminal history categories the defendant will fall.  See U.S.S.G. Ch. 5, Pt. A.  "In general, more status points result in a higher criminal history category and a longer range of imprisonment under the guidelines for an instant offense."  United States v. Bailey, No. 19-CR-142, 2024 WL 453619, at *2 (E.D. Pa. February 6, 2024)(Kenney, J.).

On November 1, 2023, Amendment 821 came into effect.  See Supp. to App. C at 244.  Amendment 821 -- which has retroactive effect and thus may be applied to closed cases, see U.S.S.G. § 1B1.10(a)(1), (d) -- revises how status points are calculated such that defendants with 7 or more criminal history points now receive 1, instead of 2 status points if they committed their offense while under a criminal justice sentence, see U.S.S.G. § 4A1.1(e); Supp. to App. C at 235.  Amendment 821 also amends § 4A1.1 such that 1 status point is added only for those defendants

committing an offense while under a criminal justice sentence who have over 7 status points.  See § 4A1.1(e); United States v. Bailey, 2024 WL 453619, at *2 ("[D]efendants with six or fewer criminal history points now receive zero status points.").  Additionally, Amendment 821 moves the language directing courts to apply the status-point increase from § 4A1.1(d) to § 4A1.1(e).  See Supp. to App. C at 235.  The result of Amendment 821's status point reduction is that "approximately 11,500 [federal defendants] are eligible to seek a reduction in their current sentence."  Materials Relating to the 2023 Criminal History Amendment, U.S. Sent'g Comm'n (last visited May 8, 2024), https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment.

As justification for Amendment 821, the Sentencing Commission explains that, while "an offender's criminal history calculation under the guidelines is strongly associated with the likelihood of future recidivism by the defendant, . . . status points add little to the overall predictive value associated with the criminal history score."  Supp. to App. C at 241 (citing U.S. Sent'g Comm'n, Revisiting Status Points (2022), https://www.ussc.gov/research/research-reports/revisiting-status-points).  According to the Sentencing Commission, "recent research suggests that 'status points' improve the predictive value of the criminal history score less than the original Commission may have expected," and "[a]ccordingly, the Commission determined that it was appropriate to address several concerns regarding the scope and impact of status points."  Supp. to App. C at 241.  First, the Sentencing Commission observed that a defendant impacted by § 4A1.1(e) will likely already face a separate "consecutive punishment imposed upon revocations of supervised release."  Supp. to App. C at 241. Second, the Sentencing Commission observed that "it is also possible that an offender's criminal history score would be independently increased as

the result of additional time imposed as the result of a revocation of probation or supervised release

for the offense that also results in the addition of status points."  Supp. to App. C at 241.[7]

_____

[7]While the Court is unable to do the research to question the Sentencing Commission's decision that status points add little to predict future criminal activity, the Court thinks that there are other reasons that status points may be valuable.  Congress evidently thinks that it is important for the federal court to supervise defendants coming out of prison; but supervision of recently incarcerated individuals does not necessarily have to fall under the purview of the judiciary. Federal judicial supervision of defendants is a relatively novel practice, which only began in 1984 with the passage of the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987 (1984).  By contrast, in New Mexico, State probation officers are in the corrections department, and not in the State judiciary.  See Probation and Parole, New Mexico Corrections Department, www.cd.nm.gov/divisions/probation-and-parole.  The Court does not think the federal courts should be supervising their defendants, as supervising defendants is not a core judicial function. Nevertheless, Congress wants the federal courts to perform this supervision, and the Court is obligated faithfully to carry out this task -- even if it is not its favorite judicial obligation.

Supervised release is a major part of the Court's job.  In a border State with twenty-three Indian reservations and because the Court has been on the bench for twenty-one years, the Court has sentenced approximately 2800 defendants; the number of people on supervised release grows with years of service.  The District of New Mexico ranks fifth among the ninety-four districts in the number of filed criminal cases.  See U.S. District Courts - Criminal Defendants Filed, by Offense and District, Table D-3, United States Courts (2023), www.uscourts.gov/statistics/table/d-3/statistical-tables-federal-judiciary/2023/12/31.  By way of example, the Court held seventy-three revocation hearings in 2023.  Hence, the burden of supervised release on the Court is great and unwelcome.

The Court's view notwithstanding, once Congress has given the Court the task of supervising defendants coming out of prison, it must do the best to perform this responsibility faithfully.  While status points may not predict future criminal activity, they send a signal that the federal court takes supervised release seriously.  By amending the Guidelines to add Amendment 821, the Sentencing Commission has just weakened that signal in two ways.  First, the Sentencing Commission has told defendants that it is lowering the points they will receive when they violate supervised release.  Second, the Sentencing Commission tells everyone in prison that the lowering is retroactive, broadcasting to everyone in prison that the Sentencing Commission is lowering the points of supervised release.

The Court went to Seattle last year to the United States Sentencing Commission Conference and urged the Sentencing Commission not to make Amendment 821 retroactive.  Even if the Sentencing Commission going forward does not want to assign status points, there is no sound reason to make this change retroactive.  The Court works very hard to sentence its approximately 130 defendants each year, and then the Sentencing Commission tells the Court it must reevaluate these sentences.  Nothing in justice and fairness requires this additional work; there is nothing "wrong" with the first sentence.  A Sentencing Commission's ideological desire to decrease the prison population does not alleviate the burden that the process places on the courts

and the signal that it sends to defendants that the system does not take supervised release as seriously as it used to do.

Finally, in the Court's view, some of the Sentencing Commission's observations do not reflect reality. For example, the Sentencing Commission observes that defendants implicated by § 4A1.1(a) likely will already face a separate "consecutive punishment imposed upon revocations of supervised release." Supp. to App. C at 241. While the Court cannot say what every judge does, the Court rarely, if ever, makes the sentence for revocation fully consecutive. The Court works hard to come up with a reasonable sentence for the new crime. To start slapping another few months and running it all consecutively sometimes undoes all the work on the new sentence. Typically, the Court gives the defendant a Guideline sentence for the revocation violation, but runs the entire sentence concurrently, except 1 month, which it runs consecutively. This practice does not undo all of the hard work on the new sentence but gives the defendant a month for violating supervised release. This month sends a signal to the defendant that the Court takes supervision seriously. The Court orally describes to the defendant that this one month is specifically for violating supervised release; the defendant should remember that he or she is serving that last month because he or she violated supervised release. The Court talks to them about the importance of supervised release and that, if he or she violates, all of the Court's, as well as the parties', hard work to create a fair sentence will go out the window.

The current United States Attorney and his Assistants' positions in this case and many others before the Court are proof that the Sentencing Commission's policy changes are wrongheaded. The current United States Attorney and his Assistants believe that the Court should not reduce McDonald's sentence. See Response at 1. The Court is sympathetic to the line attorneys' concern with lowering the guideline range for these sentences, and the Court encourages the line attorneys to direct their arguments to Main DOJ and to Attorney General Merrick Garland, who helped fill the spots that President Trump left open. See Acting Chair Judge Charles Breyer, Incoming Chair Judge Carlton W. Reeves Applaud Senate Confirmation of New Commissioners, United States Sentencing Commission (August 5, 2022), https://www.ussc.gov/about/news/press-releases/august-5-2022.

As much as the Court disagrees with what the Sentencing Commission is doing with Amendment 821, particularly in its decision to make Amendment 821 retroactive, the Court also believes that elections have consequences. President Trump, who passed the First Step Act, largely to attract African American votes, see Greg Miller, Allegations of Racism Have Marked Trump's Presidency and Become Key Issue as Election Nears, Wash. Post (July 2, 2020)("[F]ormer officials said that Trump only agreed to support the measure when told it might boost his low poll numbers with Black voters."), did not fill the vacancies on the Sentencing Commission to implement his Act. President Biden filled these spots. The Court will not let its own thoughts about policy block its duty to implement the Sentencing Commission's decision on policy. The Court will attempt to apply the new rules as faithfully as it possibly can.

## ANALYSIS

The Court grants the Motion. In applying the three-step analysis that <u>C.D.</u>, 848 F.3d at 1289, mandates, the Court first concludes that McDonald was sentenced based on a Guideline range that the Sentencing Commission subsequently lowered, because McDonald's Guideline imprisonment range was 24-30 when he was sentenced and the retroactive application of Amendment 821 results in a new Guideline range of 18-24 months. Second, the Court concludes that a reduction in McDonald's sentence is consistent with the U.S.S.G. § 1B1.10 policy statement. Third, the Court concludes that McDonald is entitled to relief in light of the § 3553(a) sentencing factors.

## I.   MCDONALD WAS SENTENCED BASED ON A GUIDELINE RANGE THAT THE SENTENCING COMMISSION SUBSEQUENTLY LOWERED.

The Court concludes, as the parties and the USPO all agree, that McDonald has satisfied the first prong of the § 3582(c)(2) analysis, because Amendment 821's retroactive application results in a lower Guideline imprisonment range than McDonald had at the time of his sentencing. <u>See C.D.</u>, 848 F.3d at 1289. Amendment 821 applies retroactively. <u>See</u> U.S.S.G. § 1B1.10(a)(1), (d); <u>United States v. Claybron</u>, 88 F.4th 1226, 1228 (7th Cir. 2023). Amendment 821's Part A alters U.S.S.G. § 4A1.1, changing the way criminal history status points are calculated for the purposes of establishing the defendant's criminal history category. Section 4A1.1(e) adds "status" points to a defendant's criminal history score if the defendant "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release[ ] or escape status." U.S.S.G. § 4A1.1(e). Under Amendment 821's Part A, defendants with 7 or more criminal history status points now receive 1 status point rather than 2 additional status points and defendants with less than 7 criminal history status points receive no

additional status points if they committed their offense while under a criminal justice sentence. See Supp. to App. C at 235; United States v. Fabian-Hurtado, No. CR 21-644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.).

The PSR calculates McDonald's criminal history score at 8 by adding 2 points to McDonald's subtotal criminal history score of 6 pursuant to § 4A1.1(d), because McDonald committed his offense "while under a criminal justice sentence . . . ." PSR ¶¶ 29-31, at 8. Pursuant to Amendment 821, no status points are added pursuant to § 4A1.1(e) if the defendant's subtotal criminal history score is less than 7. See Supp. to App. C at 235; U.S.S.G. § 4A1.1(e). Accordingly, if Amendment 821 had been in place when McDonald was sentenced, McDonald's criminal history score would have been 6. See U.S.S.G. § 4A1.1(e). Pursuant to the U.S.S.G. Ch. 5, Pt. A Sentencing Table, therefore, McDonald's criminal history category would have been a III rather than a IV. See United States v. Fabian-Hurtado, 2024 WL 706934, at *3 ("Defendant no longer meets criteria for criminal history category V. Defendant's new criminal history is IV -- based on eight points plus the additional '1 point' under the new USSG § 4A1.1(e)."). With an offense level of 13, McDonald's properly calculated Guideline imprisonment range is 18-24 months as opposed to 24-30 months, which was McDonald's Guideline imprisonment range at sentencing before Amendment 821. Accordingly, McDonald has shown that "he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing." C.D., 848 F.3d at 1289.

## II.   A REDUCTION IN MCDONALD'S SENTENCE IS CONSISTENT WITH SENTENCING COMMISSION POLICY STATEMENTS.

A reduction in McDonald's sentence from 26 months to 20 months, see Motion at 2, is consistent with U.S.S.G. § 1B1.10, which the Tenth Circuit advises is the pertinent policy

statement covering reductions in terms of imprisonment as a result of an amended Guideline range, see C.D., 848 F.3d at 1289; U.S.S.G. § 1B1.10(a)(1) ("As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.").  As an initial matter, § 1B1.10(d) lists Amendment 821 as a retroactive amendment, as § 1B1.10(a)(2)(A) requires, and, as explained in Section I, supra, at 21, Amendment 821 has "the effect of lowering the defendant's applicable guideline range," as § 1B1.10(a)(2)(B) requires. Furthermore, McDonald's requested 20-month sentence does not reduce McDonald's term of imprisonment "to a term that is less than the minimum of the amended guideline range . . . ," U.S.S.G. § 1B1.10(b)(2)(A), nor will "the reduced term of imprisonment be less than the term of imprisonment the defendant has already served," U.S.S.G. § 1B1.10(b)(2)(c).  Pursuant to the Sentencing Commission's specific guidance regarding Amendment 821, "the effective date of the court's order is February 1, 2024, or later."  U.S.S.G. § 1B1.10(e)(2).

As § 1B1.10 delineates, a court also may review a defendant's entitlement to relief based on his post-sentencing conduct, and must consider "the nature and seriousness of any threat to public safety in determining whether a reduction is warranted."  United States v. Osborn, 679 F.3d 1193, 1195 (10th Cir. 2012).  See U.S.S.G. § 1B1.10 cmt. n.1(B)(ii).  While incarcerated, McDonald has maintained good behavior.  See Memo. at 2 ("According to BOP records, the defendant has not incurred any disciplinary infractions while in custody."); Response at 5.  Cf. United States v. Lindsey, No. CR 01-0588, 2015 WL 12914439, at *2 (D.N.M. October 30, 2015)(Armijo, C.J.)("The United States shows that since this Court last denied Defendant's motion for a reduction in sentence based, in part, on his record of misconduct in prison, Defendant's misconduct has continued."), aff'd, 651 F. App'x 829 (10th Cir. 2016).  Moreover, despite that McDonald's failure to register as a sex offender is serious, the offense is nonviolent, and the Court

concludes that a reduction in McDonald's sentence will not pose a serious danger to the community.  See U.S.S.G. § 1B1.10 cmt. n.1(B)(ii).  Cf. United States v. Osborn, 679 F.3d at 1196 ("The seriousness of the offense, given the involvement of firearms on multiple occasions, is a proper basis for denying a motion under § 3582(c)(2).  So too is the presence of prison disciplinary reports on Osborn's record.").

## III.   MCDONALD IS ENTITLED TO RELIEF IN LIGHT OF THE § 3553(a) SENTENCING FACTORS.

Having considered the § 3553(a) factors, the Court concludes that a reduction in McDonald's sentence is appropriate.  "A defendant's eligibility for sentencing reduction does not give him an absolute right to reduction."  United States v. Collazo, 2020 WL 601943, at *3.  Rather, courts must ensure that a reduced sentence remains consistent with the § 3553(a) factors, which call upon district courts to evaluate, as pertinent here, "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the "need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence."  18 U.S.C. § 3553(a)(1), (a)(2)(A)-(B). Despite that the Tenth Circuit does not require district courts to explain their consideration of the § 3553(a) factors, the Court will briefly outline its reasoning.  See United States v. Chavez-Meza, 854 F.3d 655, 661 (10th Cir. 2017)("Even though district courts need not explain their decisions in sentence-reduction orders, that does not mean that they should not do so."), aff'd, 585 U.S. 109 (2018).

The United States argues that the Court should exercise its discretion at this third prong of the § 3582(c)(2) analysis to deny the Motion, because "the nature and circumstances of [McDonald's] offense along with his criminal history and characteristics do not support a reduction

in his sentence." Response at 4. Specifically, the United States points to the fact that McDonald's "offense at issue was Defendant's second conviction for failing to register as a sex offender," and that McDonald violated the conditions of supervised release by being arrested "for driving while impaired near the time of his second failure to register . . . ." Response at 4. Although the Court agrees that failure to register as a sex offender is a serious offense and considers the fact this is the second time that McDonald has committed the offense, United States v. Osborn, 679 F.3d at 1196 ("[T]he nature and circumstances of the underlying offense are eminently proper considerations in a motion under § 3582(c)(2)."), the Court carefully considered the § 3553(a) factors when it sentenced McDonald and concluded that a sentence within the guideline range was appropriate, see Sentencing Tr. 16:14-19 (Court). The Court finds no reason to depart from its prior analysis and believes today, as it did at sentencing, that a Guideline sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence to criminal conduct without being greater than necessary. See United States v. Ellis, No. CR 03-1890, 2008 WL 4811168, at *11 (D.N.M. June 3, 2008)(Browning, J.)("The Court's previous decision to sentence Ellis at the bottom end of the Guidelines range would be reasonable with respect to the recalculated sentence."). In sum, the Court concludes that McDonald has demonstrated that he is entitled to a reduction in his sentence pursuant to § 3582(c)(2).

    **IT IS ORDERED** that the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed February 15, 2024 (Doc. 38), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Kimberly N. Bell
Novaline Wilson
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Aric G. Elsenheimer
Devon Fooks
Theodosia Johnson
Federal Public Defender
Albuquerque, New Mexico

       *Attorneys for the Defendant*